# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**,

          Plaintiff,

**v.**

                                             **Case No. 17-CR-97**

**TERRY ROBINSON**,

          Defendant.

---

## RECOMMENDATION ON DEFENDANT'S
## MOTION TO SUPPRESS (ECF No. 4)

---

On June 6, 2017, a grand jury sitting in the Eastern District of Wisconsin returned a four count indictment against Terry Robinson. ECF No. 1. The indictment charges Mr. Robinson with (1) knowingly possessing, training, and receiving animals for participation in an animal fighting venture in violation of 7 U.S.C. § 2156(b); (2) knowingly possessing with intent to distribute a mixture and substance containing marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); (3) being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and (4) knowingly possessing a firearm in furtherance of the drug trafficking offense described above, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *Id*. The indictment charges that these events occurred on or about March 29, 2017. *Id*. The indictment also included a forfeiture notice. *Id*.

Mr. Robinson was arraigned on June 20, 2017. ECF No. 3. The case is assigned

to United States District Judge Pamela Pepper for trial or change of plea and to this Court for pretrial motions. The defendant's trial is scheduled for August 28, 2017. *Id.*

On July 5, 2017, Mr. Robinson filed a motion to suppress evidence, alleging that the affidavit in application for the search warrant was insufficient to establish probable cause. ECF No. 4. He did not request an evidentiary hearing. *Id.* The government opposes the motion to suppress. ECF No. 8. Mr. Robinson filed a reply brief, ECF No. 9, and the motion is now ready for resolution. For the reasons that follow, the Court will recommend that Mr. Robinson's motion to suppress be denied.

## II. Discussion

Mr. Robinson seeks an order suppressing all evidence and derivative evidence obtained as a result of the March 29, 2017, execution of search warrant at his home, including any evidence seized during execution of that warrant as well as any evidence from subsequent warrants that were issued based on evidence obtained. ECF No. 4. For clarification purposes, the warrant that Mr. Robinson challenges is the initial warrant, which was for a canine search of the curtilage of his residence (the "canine warrant"). Subsequent to the canine search, which resulted in a positive canine alert for presence of controlled substances, another search warrant was issued for search of the residence.

As grounds for his motion, Mr. Robinson argues that the canine warrant is invalid because "[t]he Affidavit for Search Warrant fails to establish probable cause to believe that the items to be searched for (specifically smells) would be located in the home." *Id.* at 1. Specifically, he asserts that the affidavit fails to provide any

information regarding the credibility of the Confidential Informants (CI#1 and CI#2). He further asserts that the warrant is lacking in probable cause due to staleness. These arguments are limited to the four corners of the search warrant affidavit. Thus, the Court will begin by summarizing the contents of that document.

## A. Search warrants

City of Milwaukee police officer Christopher Navarrette, who has been a law enforcement officer for 15 years, completed the affidavit in support of the search warrants. ECF Nos. 4-1 & 8-1 at ¶ 2. He detailed his experience with investigations of drug trafficking and narcotics. *Id.* at ¶ 3. He indicated that on February 8, 2017, CI#1 shared information on a subject, Terrance AKA "Fat Boy," who CI#1 claimed was dealing cocaine. *Id.* at ¶ 8. CI#1 further provided a physical description of "Fat Boy" and informed Officer Navarrette that CI#1 had met Fat Boy at the address of 5254 N. 28th Street. *Id.*

On February 27, 2017, Officer Navarrette met with both CI#1 and CI#2 and had them make a call to "Fat Boy." *Id.* at ¶ 9. On this call, CI#1 ordered cocaine and arranged to meet "Fat Boy" at 5254 N. 28th Street to conduct the transaction. *Id.* CI#2 was provided $600.00 to complete the controlled buy. *Id.* at ¶ 10. Later that same day, officers set up surveillance in the 5200 block of N. 28th Street and observed CI#1 and CI#2 park their vehicle at the subject residence. *Id.* at ¶¶ 9-10. The officers then observed a maroon Chevrolet Impala pull up and park behind the CIs' vehicle, after which a male consistent with CI#1's description of "Fat Boy" exited the Impala and entered the front seat of the CIs' vehicle. *Id.* at ¶ 10. CI#2 gave "Fat Boy" $600.00. *Id.*

After a short period of time, "Fat Boy" exited the CIs' vehicle and entered the subject residence, 5254 N. 28th Street. *Id*. "Fat Boy" was in the residence for a short period of time, then he returned to the CIs' vehicle and handed CI#2 a clear plastic sandwich bag containing cocaine. *Id*. Following this transaction, "Fat Boy" returned to his vehicle, and the CIs drove off. *Id*. After the CIs drove off, "Fat Boy" approached the residence again and spoke with a male who exited through the front door. *Id*. Once their conversation was finished, "Fat Boy" returned to his vehicle and drove off, and the male reentered the residence. *Id*. As "Fat Boy" drove off, the officers observed the rear registration plate as 909-BMD, which was later confirmed to be listed to Terrence D. Adams. *Id*. at ¶¶ 10-11. Officers met with the CIs who turned over a clear plastic sandwich bag containing a white powdery substance, which a Nark II 07 field test confirmed to be cocaine. *Id*. at ¶ 10.

On March 19, 2017, undercover officers conducted further surveillance on the subject residence. *Id*. at ¶ 12. The officers saw a vehicle park in front of the house, a woman exit the vehicle, knock on the front door, enter the home, and exit—all within five minutes. *Id*. Based on their training and experience, the officers believed this was a drug transaction. *Id*. Also on March 19, 2017, both CI#1 and CI#2 were shown a photo of Terrence D. Adams, and both identified Adams as "Fat Boy." *Id*. at ¶ 11. Additionally, officers learned through police intelligence files that Terry S. Robinson resides at 5254 N. 28th Street and that the utilities of that address are in his name. *Id*. The affidavit does not explain what the relationship was, if any, between Mr. Adams and Mr. Robinson.

On March 24, 2017, Milwaukee County Judicial Court Commissioner Maria S. Dorsey signed the search warrant authorizing a drug detection canine search of the curtilage of 5254 N. 28th Street on March 24, 2017. ECF Nos. 4-1 & 8-1. The warrant was executed shortly thereafter, and a canine alerted on the front door of 5254 N. 28th Street, indicating the presence of controlled substances inside the residence; based on that alert, officers obtained a warrant to search the residence for evidence of drug trafficking. ECF No. 8-2. During execution of the warrant, officers recovered a loaded firearm, five pounds of marijuana, two grams of crack cocaine, and four American Pitbull terriers (three of which were fight-scarred). ECF No. 8, at 3.

## B. Analysis

### 1. Legal framework

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755 (7th Cir. 2003).

"A search warrant affidavit establishes probable cause when it 'sets forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime.'" *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000) (quoting *United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990)). In deciding whether an affidavit establishes probable cause, "courts must use the

flexible totality-of-the-circumstances standard set forth in *Illinois v. Gates*, 462 U.S. 213, 238 (1983)." *McNeese*, 901 F.2d at 592. In applying this standard, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts." *Id.* at 232. Thus, "[i]n dealing with probable cause, … as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175 (1949). "Probable cause denotes more than mere suspicion, but does not require certainty." *United States v. Anton*, 633 F.2d 1252, 1254 (7th Cir. 1980).

The Court's duty in reviewing a search warrant and its supporting materials is limited to ensuring "that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." *Gates*, 462 U.S. at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). Accordingly, a magistrate judge's finding of probable cause must be "'given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the

crime and located in the place indicated.'" *United States v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir. 1984) (quoting *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir. 1982)). Even "doubtful cases should be resolved in favor of upholding the warrant." *Rambis*, 686 F.2d at 622.

### 2. The affidavit established probable cause for the canine warrant

Mr. Robinson asserts that the affidavit's assertions did not support "probable cause to believe that the items to be searched for (specifically smells) would be located in the home to be searched." ECF No. 4. Mr. Robinson argues that the affidavit's failure to include any information regarding the CIs is an insurmountable error. *Id.* at 4-5 (citing *U.S. v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014)). To be sure, the canine warrant affidavit is relatively sparse, and it does not provide information regarding the reliability of the CIs in the affidavit. But Mr. Robinson's focus on informant reliability fails to consider the totality of the circumstances.

Among those circumstances are the following: Law enforcement officers directly observed the activities surrounding the February 27 controlled buy and thus did not need to rely on the veracity of the CIs. Of particular significance, officers were able to see that Mr. Adams left the CIs' car and entered the subject residence before completing the controlled buy. If Mr. Adams had brought the cocaine with him to the buy, there would have been no reason for him to suspend the transaction to enter the residence. The officers later tested the product received by the CIs and were able to determine that it was cocaine, again without having to rely on the veracity of the CIs.

The circumstances surrounding the controlled buy, all observed by the officers,

support the less invasive curtilage drug sniff that the affidavit sought. Of course, "'controlled buys add great weight to an informant's tip.'" *See United States v. Mullins*, 803 F.3d 858, 863-864 (7th Cir. 2015) (quoting *United States v. McKinney*, 143 F.3d 325, 329 (7th Cir. 1998)); *see also United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996) (concluding that the officer's testimony concerning the controlled buys, combined with the informant's information, was enough to support a finding of probable cause).

Oftentimes, "nothing will directly indicate that evidence of a crime will be found in a particular place." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). A judge may issue a warrant "even in the absence of direct evidence linking criminal objects to a particular site." *United States v. Orozco*, 576 F.3d 745, 749 (7th Cir. 2009) (quoting *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991)). "An issuing magistrate 'is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense,' and specifically, '[i]n the case of drug dealers, evidence is likely to be found where the dealers live.'" *Orozco*, 576 F.3d at 749 (citing *Lamon*, 930 F.2d at 1189 (internal quotation marks omitted)). The totality of the circumstances described in the affidavit, including the CIs' statements and Officer Navarrette's extensive experience with narcotics crimes, combined with the controlled buy, provides ample support for the issuing judge to believe that evidence would be found at Mr. Robinson's residence.

While courts should consider "possible innocent alternatives" in the

totality-of-the-circumstances analysis, it is well-established that "the mere existence of innocent explanations does not necessarily negate probable cause." *United States v. Funches*, 327 F.3d 582, 587 (7th Cir. 2003). Indeed, **"**probable cause is far short of certainty—it 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012) (quoting *Gates*, 462 U.S. at 243 n.13). Courts are required to view the entire affidavit, with a focus on the totality of the circumstances.

Perhaps Mr. Robinson's strongest argument is that the information in the affidavit was stale and could not support the belief that evidence of criminality would be found at his residence. He supports this argument by noting that the confidential sources first shared information with officers on February 8, 2017, and that the controlled buy did not occur until February 27, 2017. The observation of a woman entering and leaving the home within five minutes occurred on March 19, 2017, and all these facts were used to obtain the warrant to allow a drug detection canine to search the curtilage of the home on March 24, 2017. ECF No. 4, at 2. Nineteen days passed between the initial report by CI#1 of cocaine sales by Fat Boy and the controlled buy, and twenty-five days passed from the controlled buy to the issuance of the warrant. The total time from the initial CI report to obtaining a warrant was 44 days.

There is no bright line rule for determining staleness. *United States v. Sutton*, 742 F.3d 770, 774 (7th Cir. 2014). Further, recency of information provided to the issuing judge is but one factor bearing on the question of probable cause. *United*

*States v. Pappas*, 592 F.3d 799, 803 (7th Cir. 2010); *see also United States v. Watzman*, 486 F.3d 1004, 1008 (7th Cir. 2007); *United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008). "When a search is authorized by a warrant, deference is owed to the issuing judge's conclusion that there is probable cause." *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014). "Courts should defer to the issuing judge's initial probable cause finding if there is substantial evidence in the record that supports his decision." *Id.* (quotation marks omitted).

On balance, defendant's staleness argument fails to convince. The passage of over three weeks from the controlled buy (the best evidence supporting the warrant) and the issuance of the warrant is not ideal. Nevertheless, it is not so great a period of time as to cause this Court to disturb the Milwaukee County Commissioner's judgment that the affidavit indicated ongoing criminal activity. *See United States v. Mitten*, 592 F.3d 767, 776 (7th Cir. 2010) (internal quotations omitted). Further, the officers observed what they believed to be an additional drug transaction on March 19, less than a week before the warrant issued. Based on the totality of the circumstances, the Commissioner could reasonably infer that the subject residence was involved in drug trafficking and that the house may well contain proceeds or other evidence of trafficking. Additionally, it is of moment that the affidavit sought a canine sniff of the curtilage rather than the more intrusive search of the residence itself.

### 3. Suppression is not an appropriate remedy here

Even assuming that the warrant was invalid, suppression would be an

inappropriate remedy in this case. Under the good faith exception to the exclusionary rule, evidence obtained pursuant to a search warrant unsupported by probable cause is only suppressible in very limited circumstances. *United States v. Leon*, 468 U.S. 897, 926 (1984). The fruits of a search based on an invalid warrant may be admitted at trial if the executing officer relied on the invalid warrant in good faith. *Id.* at 922. "An officer's decision to obtain a warrant is *prima facie* evidence that she was acting in good faith." *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005) (referencing *United States v. Merritt*, 361 F.3d 1005, 1013 (7th Cir. 2004)). And unless a "reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization," the officers are presumed to rely in good faith on the validity of the search warrant. *Leon*, 468 U.S. at 922 n. 23.

Nevertheless, a defendant can rebut the presumption of good faith by showing that (1) the issuing judge abandoned his role as a neutral and detached arbiter; (2) the officers were reckless or dishonest in preparing the supporting affidavit; or (3) the affidavit was so lacking in probable cause that no officer could have reasonably relied on it. *Id.* (citing *Leon*, 468 U.S. at 923).

Here, there is no allegation that the issuing Commissioner was anything but neutral, and there is likewise no allegation that Officer Navarrette was dishonest or reckless in preparing the affidavit. Under these circumstances, I do not believe the affidavit would have given the executing officers any reason to doubt that the warrant was supported by probable cause.

Accordingly, in light of the foregoing, I recommend that the district court find

that the affidavit in support of a search warrant was supported by probable cause and therefore deny Mr. Robinson's motion to suppress. Alternatively, if the district court finds the warrant to be unsupported by probable cause and therefore invalid, I recommend that the district court deny Mr. Robinson's motion to suppress based on the good faith exception under *Leon*.

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that defendant Terry Robinson's motion to suppress, ECF No. 4, be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Crim. P. 59(b), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this Recommendation or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of your right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin, this <u>28th</u> day of July, 2017.

BY THE COURT:

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge