UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                      Case No. 17-cr-97-pp

TERRY ROBINSON,

        Defendant.

---

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DKT. NO. 10) AND DENYING DEFENDANT'S MOTION TO SUPPRESS (DKT. NO. 4)**

---

On June 6, 2017, a grand jury returned a four-count indictment charging defendant Terry Robinson with (1) possessing and training animals for animal fighting; (2) possessing marijuana with intent to deliver; (3) possessing a firearm after having been convicted of a felony; and (4) possessing a firearm in furtherance of a drug trafficking offense. Dkt. No. 1. One month later, on July 5, 2017, the defendant filed a motion to suppress all evidence recovered from the March 29, 2017 search of the residence at 5254 N. 28th Street in Milwaukee. Dkt. No. 4. The defendant lived at 5254 N. 28th Street, although not alone. Id. at 2. In challenging the March 29, 2017 search, the defendant attacked the validity of a previous search warrant—executed on March 24, 2017—that authorized a drug-sniffing canine search of the curtilage of the 5254 N. 28th St. residence. Id. The defendant argued that the affidavit supporting the March 24, 2017 canine search warrant failed to establish

1

probable cause, and that the results of *that* search led to the issuance of the warrant for the March 29, 2017 search. Id. The government responded, dkt. no. 8, and the defendant replied, dkt. no. 9.

On July 28, 2017, Magistrate Judge David Jones issued a report and recommendation denying the motion to suppress. Dkt. No. 10. On August 9, 2017, the defendant objected to Judge Jones' report. Dkt. No. 12. The court adopts Judge Jones' report and recommendation, and denies the motion to suppress.

I. **Factual Background**

Judge Jones' report details the contents of the affidavit that provided probable cause for the March 24, 2017 search warrant. Dkt. No. 10 at 2-5. The court briefly recounts those facts here. The affidavit mentioned two confidential informants ("CIs"), a subject with the nickname "Fat Boy" and surveillance of the residence at 5254 N. 28th Street. Dkt. No. 4-1 at 2-3. In early February 2017, a confidential informant shared information with Milwaukee police officer Christopher Navarrette that "Terrance AKA 'Fat Boy'" was dealing cocaine. Id. at 2. Officer Navarrette, a fifteen-year veteran in law enforcement (id. at 1), would later complete the affidavit in support of the March 24, 2017 search warrant. Id. CI #1 described "Fat Boy" as a five-foot, ten-inch, 300-pound African American man with short hair and a light complexion. Id. at 2, ¶8.

Milwaukee police officers set up a controlled buy between confidential informants and "Fat Boy" for February 27, 2017. Id. at 2, ¶9. On that day, CI #1 called "Fat Boy" and arranged to meet at 5254 N. 28th Street to buy

cocaine. Id. Officers gave the confidential informants $600.00 to complete the controlled buy and set up surveillance in the 5200 block of N. 28th Street. Id. at 2-3, ¶10. The officers then watched as CI #1 and CI #2 drove together to the 5200 block of 28th St. and parked their car on the street Id. The officers saw a car arrive, and saw an approximately five-foot, ten-inch, 300-pound African-American man exit the car and get into the passenger seat of the CIs' vehicle. Id. CI #2 gave this man – who fit the description of "Fat Boy" – $600.00. Id. "Fat Boy" then entered the 5254 N. 28th St. residence for a short period of time before returning to the CIs' vehicle. Id. "Fat Boy" gave CI #2 a clear plastic sandwich bag containing a white powdery substance – later tested and found to be cocaine – and returned to his car. Id. After the CIs drove away, officers saw "Fat Boy" go back up to the 5254 N. 28th St. residence and speak with a man who had exited through the front door. Id. When their conversation finished, "Fat Boy" drove away, and the officers recorded the rear license plate of his car as "909-BMD," later confirmed to be registered to Terrence D. Adams. Id. at p. 3, ¶¶10-11.

Three weeks later, on March 19, 2017, undercover officers again surveilled the 5254 N. 28th Street residence. Id. at p. 3, ¶12. This time, they saw three events in a five-minute span: (1) a vehicle parked in front of the house; (2) a woman exited the vehicle and entered the home; and (3) the same woman left the home and drove away. Id. The officers believed this to be a drug transaction. Id. That same day, both CIs identified a photo of Terrence D. Adams as "Fat Boy" and officers learned through police intelligence files that

Terry S. Robinson resided at 5254 N. 28th Street and paid utilities for that address. Id. at ¶11. As Judge Jones noted, however, "[t]he affidavit does not explain what the relationship was, if any, between Mr. Adams and [the defendant]." Dkt. No. 10 at 4.

Five days later, on March 24, 2017, Milwaukee County Judicial Court Commissioner Maria S. Dorsey signed a search warrant authorizing a drug sniffing canine search of the curtilage of 5254 N. 28th Street. Dkt. No. 4-1 at 8. During the execution of that warrant, a canine alerted at the front door, and officers used that alert to apply for and obtain a warrant to search the interior of the residence for drug trafficking activity. Dkt. No. 10 at 4. During the residential search, "officers recovered a loaded firearm, five pounds of marijuana, two grams of crack cocaine, and four American Pitbull terriers (three of which were fight-scarred)." Id.

II.     **Judge Jones' Report and Recommendation**

The defendant argued to Judge Jones that: (1) the affidavit supporting the search warrant failed to supply probable cause because it provided no information about the confidential informants' credibility or reliability; and (2) the evidence supporting the warrant was from February 27 and March 9, making it stale by the March 24, 2017 warrant date. Dkt. No. 4 at 3-4. The defendant also argued that if the court agreed that the affidavit did not establish probable cause, it should hold an evidentiary hearing to determine whether the good-faith exception to the exclusionary rule applied. Id. at 5.

Judge Jones began his recommendation by recounting the events described by Officer Navarrette's affidavit in support of the March 24, 2017 canine warrant. Dkt. No. 10 at 3-5. He then laid out the law governing search warrants and the standard that a reviewing court uses to evaluate the warrant-issuing judge's finding of probable cause. Id. at 5-6. Judge Jones rejected the defendant's argument that the case turned solely on the affidavit's failure to provide information regarding the credibility or reliability of the confidential informants; instead, he focused on the totality of the circumstances surrounding the investigation of the 5254 N. 28th St. residence. Id. at 7. He noted that officers directly observed the February 27, 2017 controlled buy and that "'controlled buys add great weight to an informant's tip.'" Id. at 8 (quoting United States v. Mullins, 803 F.3d 858, 863-64 (7th Cir. 2015)). He concluded that "[t]he totality of the circumstances described in the affidavit, including the CIs' statements and Officer Navarette's extensive experience with narcotics crimes, combined with the controlled buy, provides ample support for the issuing judge to believe that evidence would be found at Mr. Robinson's residence." Id. at 8.

As to staleness, Judge Jones reiterated that the court owes deference to the issuing judge's conclusion on probable cause: "'[c]ourts should defer to the issuing judge's initial probable cause finding if there is substantial evidence in the record that supports his decision.'" Id. at 10 (quoting United States v. Sutton, 742 F.3d 770, 773 (7th Cir. 2014)). While Judge Jones commented that the more than three-week period between the controlled buy and the issuance

5

of the warrant "[wa]s not ideal," he concluded that "it is not so great a period of time as to cause this Court to disturb the Milwaukee County Commissioner's judgment that the affidavit indicated ongoing criminal activity." Id. (citing United States v. Mitten, 592 F.3d 767, 776 (7th Cir. 2010)). He also commented that the officers observed what they believed to be an additional drug transaction on March 19, 2017, and that "the affidavit sought a canine sniff of the curtilage rather than the more intrusive search of the residence itself." Id.

Finally, Judge Jones found that even if the warrant lacked probable cause, "suppression would be an inappropriate remedy in this case." Id. at 10-11. He highlighted the *prima facie* evidence of good faith that attaches where officers seek and obtain a search warrant, and concluded "[u]nder these circumstances, I do not believe the affidavit would have given the executing officers any reason to doubt that the warrant was supported by probable cause." Id. at 11.

III. **The Defendant's Objections**

The defendant objects to Judge Jones' recommendation on several grounds. He begins by contending that Judge Jones improperly found that the officers did not need to rely on the veracity of the confidential informants regarding the February 28, 2017 controlled buy. Dkt. No. 12 at 3. He argues that

> the affidavit does not indicate any officers were involved in the actual exchange of the money for drugs. The affidavit indicates that Fat Boy handed CI #2 the cocaine after Fat Boy went into Robinson's house. However, that critical timing could only have come from the word of the CI (as no other basis for such knowledge is included in the affidavit.[sic] This key fact could

6

> come solely from one of the CIs. Their veracity is squarely in question. For if Fat Boy delivered the drugs before he went into Robinson's home there would be a different analysis. The only way to say the exchange occurred in the chronological order that the affidavit suggests is by relying on a timeline provided by the informants. There is no audio or video to back this assertion.

Id. at 3-4.

As for his staleness argument, the defendant does not identify any particular conclusion of Judge Jones' with which he disagrees. Rather, he states that

> [t]he circumstances here indicate an approximately 30-day delay after a purchase made from a person with no known connection to the home to be searched. There is no serious indication of ongoing drug activity at the home subsequent to the one sale thirty days prior, nor any reason to believe (except the word of an uncorroborated drug dealer informant) that drug activity occurred at the home prior to Mr. Adams driving to the home.

Id. at 4.

Finally, concerning Judge Jones' conclusion that the searching officers relied on the warrant in good faith, the defendant argues that all reasonable officers know about the requirements of providing information regarding the credibility of informants. Id. at 4-5. He also notes that in United States v. Sutton, 742 F.3d 770, 774 (7th Cir. 2014), the Seventh Circuit commented that a search warrant issued ten days after law enforcement gathered the last evidence was a "lengthier interval than usual," and that, here, "the time delay was nearly triple the 'lengthier interval' of Sutton." Dkt. No. 12 at 5.

7

IV. **Analysis**

    A. *Probable Cause Based on Confidential Informants*

The Fourth Amendment states, in relevant part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. In <u>Dalia v. United States</u>, the Supreme Court found this "Warrant Clause" to require three things:

> First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense. Finally, warrants must particularly describe the things to be seized, as well as the place to be searched.

<u>Dalia v. United States</u>, 441 U.S. 238, 255 (1979) (internal citations and quotations omitted). The defendant challenges the second prong—whether probable cause supports the warrant.

The Supreme Court stated the inquiry for probable cause determinations in <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983):

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . concluding' that probable cause existed.

Gates, 462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). This court reviews whether the issuing judge had a substantial basis for concluding that probable cause existed.

While a reviewing court affords "great deference" to the issuing judge, United States v. Glover, 755 F.3d 811, 816 (7th Cir. 2014), a judge may not issue a warrant solely based on "conclusory allegations" or a "bare bones" affidavit. Sutton, 742 F. 3d at 773 (citing United States v. Koerth, 312 F.3d 862, 865 (7th Cir. 2002)). And "[w]hen an affidavit is the only evidence presented to a judge in support of a search warrant, 'the validity of the warrant rests solely on the strength of the affidavit.'" United States v. Hansmeier, 867 F.3d 807, 811 (7th Cir. 2017) (quoting United States v. Bell, 585 F.3d 1045, 1049 (7th Cir. 2009)). With regard to informants,

> [w]hen probable cause is supported by information supplied by an informant, [courts] particularly look to several factors; (1) the degree to which the informant has acquired knowledge of the events through firsthand observation, (2) the amount of detail provided, (3) the extent to which the police have corroborated the informant's statements, and (4) the interval between the date of the events and the police officer's application for the search warrant.

Id. (citing United States v. Searcy, 664 F.3d 1119, 1122 (7th Cir. 2011)). "'None of these factors is determinative,' and 'a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability.'" United States v. Mullins, 803 F.3d 858, 863 (7th Cir. 2015) (quoting United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003)).

The defendant contends that probable cause to search the residence at 5254 N. 28th St. existed only if the issuing judge accepted the timeline of

9

events as provided in the affidavit—*i.e.*, that "Fat Boy" entered the residence *before* providing the CIs with cocaine. The defendant says that the confidential informants were the only people who could substantiate this timeline, because the officers did not actually participate in the exchange of money for drugs. The defendant argues that because the issuing judge had no basis in the affidavit on which to evaluate the credibility and veracity of the confidential informants, the affidavit lacked probable cause.

Judge Jones specifically addressed these concerns in his report and recommendation when he found that "[t]o be sure, the canine warrant affidavit is relatively sparse, and it does not provide information regarding the reliability of the CIs in the affidavit." Dkt. No. 10 at 7. Instead of ending his analysis there, Judge Jones looked to the totality of the circumstances, and placed greater emphasis on the fact that police officers surveilled the 5200 block of N. 28th St. on February 27, 2017 and witnessed the controlled buy. Id.

The affidavit establishes that three officers set up surveillance of the 5200 block of N. 28th Street, and that these three officers watched the controlled buy unfold. Dkt. No. 4-1 at 2-3, ¶10. While the affidavit does not establish whether the officers were able to observe the activities inside the CIs' car, the affidavit's timeline of events is consistent with officers' observations. If "Fat Boy" had given the CIs the cocaine before entering the 5254 N. 28th St. residence, why would the CIs have waited for "Fat Boy" to go to the residence? And why would "Fat Boy" have returned to the CIs' vehicle? Even without the confidential informants to fill in the details of the controlled buy, the officers'

10

direct observations formed a substantial basis for the issuing judge to believe that the residence may contain evidence of drug trafficking activities. Combined with Seventh Circuit precedent stating that "[c]ontrolled buys add great weight to an informant's tip[,]" see Mullins, 803 F.3d at 863 (quoting United States v. McKinney, 143, F.3d 325, 329 (7th Cir. 1998)), and that "a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability," id., the court agrees with Judge Jones that the lack of details about the confidential informants does not invalidate the March 24, 2017 warrant.

    B.    *Staleness*

The defendant breaks his staleness argument out as a separate ground for arguing that the warrant failed for lack of probable cause. As Judge Jones noted, however, "recency of information provided to the issuing judge is but one factor bearing on the question of probable cause." Dkt. No. 10 at 9 (citing United States v. Pappas, 592 F.3d 799, 803 (7th Cir. 2010)). As the Sutton court recognized:

> Indeed, there is no bright line rule for determining staleness. United States v. Pappas, 592 F.3d 799, 803 (7th Cir. 2010). *Instead of setting a time limit for staleness, we consider the age of the CI's information in conjunction with the rest of the factors.* See e.g. United States v. Pless, 982 F.2d 1118, 1125-26 (7th Cir. 1992). To the extent that ten days is a lengthier interval than usual, it is not so long as to completely dispel any belief that a search would be fruitful – particularly in light of the fact that CI had previously provided reliable information to law enforcement resulting in arrest and seizure of drugs.

Sutton, 742 F.3d at 774 (emphasis added).

11

The defendant repeats his original arguments to Judge Jones in his objection to this court, but the court comes to the same conclusion as Judge Jones. Sutton makes clear that courts should consider staleness within the context of a totality of the circumstances analysis. Id. Further, as Judge Jones noted when he cited United States v. Mitten, 592 F.3d 767, 776 (7th Cir. 2010), Seventh Circuit precedent states that "[i]t is well established that the '[p]assage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal activity.'" Mitten, 592 F.3d at 776 (quoting Pless, 982 F.2d 1118, 1125-26 (7th Cir. 1992)). The affidavit laid out that CI#1 told Officer Navarette on February 8, 2017 that Fat Boy engaged in drug dealing. The affidavit describes a February 27, 2017 controlled buy, and details the March 19, 2017 undercover surveillance of an additional suspected drug transaction at the 5254 N. 28th St. residence. This court agrees with Judge Jones that, considering all of these incidents together, the time period "is not so great a period of time as to cause this Court to disturb the Milwaukee County Commissioner's judgment that the affidavit indicated ongoing criminal activity." Dkt. No. 10 at 10.

The court agrees with Judge Jones that the issuing judge had a substantial basis for concluding that the subject residence was involved in drug trafficking and that the residence at 5254 N. 28th St. may contain evidence of such activity.

C. *Good Faith*

Because the court agrees with Judge Jones that the issuing judge found probable cause to issue the March 24, 2017 warrant, the court need not address the defendant's good-faith arguments. See United States v. Wenzel, 854 F.3d 957, 962 (7th Cir. 2017).

IV. **Conclusion**

The court **ADOPTS** the report and recommendation of Magistrate Judge Jones. Dkt. No. 10. The court **FINDS** that the affidavit established probable cause that there may be evidence of drug trafficking at the 5254 N. 28th St. residence. The court **DENIES** the defendant's motion to suppress. Dkt. No. 4.

The court's staff will contact the parties to set up a scheduling conference to discuss final pretrial and trial dates.

Dated in Milwaukee, Wisconsin this 23rd day of October, 2017.

        **BY THE COURT:**

        _____
        **HON. PAMELA PEPPER**
        **United States District Judge**